*Hearing Date: October 3, 2019*
*Time: 2:30 p.m.*

**ROSEN & ASSOCIATES, P.C.**
*Counsel to Maguire Ft. Hamilton LLC*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 4218 Partners LLC, | Case No. 19-44444-NHL |
| Debtor. | |

**MOTION OF MAGUIRE FT. HAMILTON LLC FOR ENTRY OF AN ORDER**
**DISMISSING THE DEBTOR'S BANKRUPTCY CASE**

TO THE HONORABLE NANCY A. LORD,
UNITED STATES BANKRUPTCY JUDGE:

Maguire Ft. Hamilton LLC ("**Maguire**"), a secured creditor of 4218 Partners LLC, the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by its counsel, Rosen & Associates, P.C., as and for its motion (the "**Motion**") to dismiss the Debtor's Chapter 11 petition (the "**Petition**"), respectfully represents as follows:

### PRELIMINARY STATEMENT

1. Maguire seeks the dismissal of this case because the Debtor filed the Petition without having the requisite authority to do so. Remove watermark

2. A Declaration or Marvin Azrak, a principal of Maguire, in support of this Motion, is attached hereto as *Exhibit "J."*

3. As discussed below, Samuel Pfeiffer ("**Pfeiffer**") and his wife Dina Krausz ("**Krausz**" and together with Pfeiffer, the "**Original Members**") executed a pledge of all rights and interests in their respective membership interests in the Debtor (the "**Membership Interests**"), a combined 100% membership interest in the Debtor, in favor of Maguire's predecessor-in-interest to secure the Debtor's repayment of a $8,250,000 loan.

4. As discussed below, upon the Debtor's default, Maguire registered the Membership Interests in its name, and thus became vested with all rights and interests to the Membership Interests, including all management and voting rights.

5. Consequently, neither the Original Members nor their assignee (discussed below) had the power to authorize the Debtor to file its Petition and, therefore, the Petition must be dismissed.

## JURISDICTION, VENUE & STATUTORY PREDICATE

6. The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 1112, as supplemented by Rule 1017(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Loan to the Debtor**

7. On or about November 19, 2018, Maguire's predecessor-in-interest, Ice Lender XVII LLC (the "**Original Lender**"), made a loan to the Debtor in the principal amount of $8,250,000 (the "**Loan**"). The Loan was evidenced by a certain *Promissory Note* dated November 19, 2018 (the "**Note**") in favor of the Original Lender, which Note the Debtor executed and

delivered to the Original Lender contemporaneous with the making of the Loan. A copy of the Note is attached hereto as *Exhibit A*.

8. The Note was secured by a certain *Mortgage* dated November 19, 2018 (the "**Mortgage**") in favor of the Original Lender, duly recorded in the office of the Kings County Register on November 29, 2018. A copy of the Mortgage, as recorded, is attached hereto as *Exhibit B*.[1]

9. As additional collateral for payment of the Note, the Original Members executed a pledge of their Membership Interests in accordance with the terms and conditions of a certain *Membership Interest Pledge Agreement* (the "**Pledge Agreement**"), a copy of which is attached hereto as *Exhibit D*.

10. Simultaneously with the execution of the Pledge Agreement, the Original Members each executed and delivered to the Original Lender an *Assignment of Membership Interest* in blank simultaneously with the execution of the Pledge Agreement.[2] Copies of such assignments are attached hereto as *Exhibit E*.

11. The Pledge Agreement expressly provides, among other things, that in the event of a default under the Note ("**Event of Default**," as such term is defined in the Note):

> all Membership Interests ... may be registered in the name of [the Original] Lender or its nominee ... and [the Original] Lender or its nominee may thereafter exercise ... ***all voting and all equity, membership and other rights pertaining to the Membership Interests*** ... as if it were the absolute owner thereof

*See* Sec. 5 of the Pledge Agt., Ex. D (emphasis added).

---

[1] The Original Lender subsequently assigned to Maguire the Note and the Mortgage by an *Assignment of Mortgage* dated on or about March 7, 2019, a copy of which is attached hereto as *Exhibit C*.

[2] Under New York Law, the *Assignment of Membership Interest* constitutes a security certificate in "bearer form" for purposes of transferring rights to business entities.

3

12. The Pledge Agreement also provides:

> *Pledgor shall not (i) sell, transfer, pledge, assign, hypothecate or otherwise dispose of, or grant any option with respect to, any of the Collateral or the Membership Interests without the prior written consent of Lender*, which may be withheld in Lender's sole discretion, or (ii) create or permit to exist any lien, security interest, additional debt or other charge or encumbrance upon or with respect to any of the Collateral or the Membership Interests, except for the security interest granted under this Pledge without the prior written consent of Lender. A default by Pledgor to this Section 6 shall constitute an immediate Event of Default hereunder and under the Note and shall not require any notice of default to be delivered to Pledgor by Lender.

*See* Sec. 5 of the Pledge Agt., Ex. D (emphasis added).

13. Upon information and belief, the Original Members, acting in violation of the foregoing prohibition, attempted to transfer to 175 Pulaski RLM LLC their Membership Interests, which they had previously conveyed to the Original Lender pursuant to the terms of the Pledge Agreement. However, the Original Members could not have transferred what they no longer possessed. And if they did, the transfers are void and without effect, because they were made in violation of the Pledge Agreement's express prohibition.

### B. Assignment of the Loan

14. Pursuant to a *Loan Sale Agreement*, effective March 7, 2019, the Original Lender sold to Maguire and Maguire purchased from the Original Lender all its right, title, interest and obligations in, to and under the Loan Documents;[3] and in furtherance of the *Loan Sale Agreement*, the Original Lender and Maguire executed an *Assignment and Assumption of Assigned Rights and Obligations*, dated March 6, 2019, under which the Original Lender assigned to Maguire all its right, title, interest and obligations in, to and under the Loan, the Mortgage, the

---

[3] As defined below.

4

Pledge Agreement and the other documents listed on the accompanying schedule[4] (collectively, the "**Loan Documents**"). A copy of the *Assignment and Assumption of Assigned Rights and Obligations* is attached hereto as *Exhibit F*.

### C. The Debtor's Default

15. The Debtor defaulted under the terms of the Note and the Mortgage by failing to tender mortgage payments due and owing for February 1, 2019 and March 1, 2019.

16. As a result of the Debtor's failure to cure, Maguire issued a *Notice of Default and Acceleration* on March 18, 2019, notifying the Debtor of the default and acceleration of all sums due under the Loan Documents. A copy of such notice is attached hereto as *Exhibit G*.

17. Pursuant to section 5 of the Pledge Agreement, on March 18, 2019, Maguire effectively registered its Membership Interests in its name. Copies of such certificates are attached hereto as *Exhibit H*.

18. On or about April 30, 2019, Maguire served a certain *Notice of Disposition of Collateral*, giving public notice of its intention to sell the Original Members' Membership Interests to the highest bidder in accordance with the Uniform Commercial Code (the "**UCC Sale**"). The Notice was amended (and the sale postponed) five times. The most recent Notice, dated July 10, 2019, scheduled the UCC Sale for July 22, 2019. Copies of the Notices are attached hereto as *Exhibit I*.

### D. The State Court Suit

19. On July 18, 2019, just four days prior to the scheduled UCC Sale, the Debtor and 175 Pulaski RLM LLC ("**Pulaski**"), as purported transferee of the Original Members'

---

[4] "Schedule 1" to the *Assignment and Assumption of Assigned Rights and Obligations*.

5

Membership Interests,[5] filed a complaint against Maguire in the New York Supreme Court, Kings County, in the action styled, *175 Pulaski RLM LLC et al v. Maguire Ft. Hamilton LLC* (Index No. 515910/19) (the "**State Court Action**"), seeking, among other forms of relief, a temporary restraining order enjoining the UCC Sale, based upon the allegations that, under the Debtor's amended operating agreement,[6] (i) the underlying dispute is subject to mandatory Rabbinical Court arbitration; and also, because the terms of the amended operating agreement prohibit any and all transfers of membership interests, the "planned UCC Sale cannot convey anything." *See* Verified Complaint ¶ 41, Ex. F.

20. The plaintiffs also alleged, without a cognizable basis in law or fact, that (i) Pulaski's membership interests are free of any enforceable security interest;[7] (ii) the sale as scheduled is commercially unreasonable and is thus prohibited; and (iii) the Loan Documents are void and thus cannot be enforced in any manner. *See* Verified Complaint ¶ 11, Ex. F.

21. As expected, the state court entered on July 22, 2019 an order dated July 19, 2019 denying the request for a temporary restraining order on July 22, 2019. *See* Order.

22. On July 22, 2019, 175 Pulaski RLM LLC, facing the imminent sale of the Membership Interests (apparently believing it validly possessed them), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

---

[5] The purported transfers are violations of the terms of the Loan Documents and as such are a nullity. Section 6 of the Pledge Agreement provides:
> Pledgor shall not (i) sell, transfer, pledge, assign, hypothecate or otherwise dispose of, or grant any option with respect to, any of the Collateral or the Membership Interests without the prior written consent of Lender, which may be withheld in Lender's sole discretion, or (ii) create or permit to exist any lien, security interest, additional debt or other charge or encumbrance upon or with respect to any of the Collateral or the Membership Interests, except for the security interest granted under this Pledge without the prior written consent of Lender. A default by Pledgor to this Section 6 shall constitute an immediate Event of Default hereunder and under the Note and shall not require any notice of default to be delivered to Pledgor by Lender.

[6] Amended by Pulaski in violation of the Loan Documents.

[7] In fact, Maguire's security interests in the Membership Interests were properly perfected under New York law by its possession of the certificated Membership Interests. *See* N.Y. UCC §§ 8-102(a)(2) and 8-301 (possession of a security certificate in "bearer form" creates a registered security interest).

"**Bankruptcy Code**"). In addition, Joseph Fischman, acting in the capacity of Manager of the Debtor, executed and caused the Debtor to do the same on July 22, 2019 (the "**Petition Date**").

23. However, as of the Petition Date, Joseph Fischman had no authority to cause the Debtor to file the Petition. In fact, Maguire had been vested with sole authority to govern the Debtor. Because Maguire did not authorize the Debtor to file the Petition, the Petition must be dismissed.

## ARGUMENT

24. Section 1112(b) of the Bankruptcy Code provides, in pertinent part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter ... *for cause*." *See* 11. U.S.C. § 1112(b)(1) (emphasis added).

25. It is well-settled that lack of authority to file a voluntary chapter 11 bankruptcy petition constitutes an independent ground for "cause" for relief under section 1112(b) of the Bankruptcy Code. *See In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014) ("In addition to 'cause' under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation.") (citing *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513 (1945).

26. The Supreme Court has opined that only the entity vested with "the power of management" has the requisite authority to file a bankruptcy petition. *Price v. Gurney*, 324 U.S. 100, 104, 65 S.Ct. 513, 89 L.Ed. 776 (1945). Whenever a court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Id.* at 106.

27. State law governs a Debtor's authority to file a voluntary petition in bankruptcy. *See In re Quad–C Funding LLC*, 496 B.R. at 141 ("[T]he Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, courts initially look to the state law governing the entity.") (citations omitted); *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) ("[t]he authority to file a bankruptcy petition on behalf of a corporation must derive from state law.") (citation omitted).

28. The Debtor is a New York limited liability company, and thus, under New York Limited Liability Company Law, the LLC's operating agreement governs the parties' conduct. *In re E. End Dev., LLC*, 491 B.R. 633, 638–39 (Bankr. E.D.N.Y. 2013).

29. Under the *Limited Liability Company Operating Agreement of 4218 Partners LLC*, dated August 31, 2018 (the "**Operating Agreement**"), "any and all decisions [regarding] the business affairs of the [Debtor] shall be managed by the Managing Member." *See* Operating Agt. § 5.

30. Pursuant to the Pledge Agreement, Maguire's registration of its certificated Membership Interests completely divested the Original Members (and their purported transferee) of all management rights and authority to act on behalf of the Debtor on the Petition Date. *See* New York LLCL § 603 ([A] member ceases to be a member and to have the power to exercise any rights or powers of a member upon assignment of all of his or her membership interest).

31. Indeed, courts have routinely authorized this disposition in similar circumstances. *See e.g., Raible v Puerto Rico Industrial Development Co.*, 392 F2d 424 (1st Cir. 1968) (when shares have been pledged to a creditor, the right to vote the stock is governed by the agreement between the parties); *In re Eastern Bancorporation*, 23 B.R. 474, (Bankr. E.D. Pa.

1982) (A pledge agreement allowing bank, upon default of corporation's affiliates on loans, to exercise all voting and corporate rights of affiliates at meeting of corporation's shareholders was controlling over general provisions of statute requiring that, to be able to vote, shareholder must be shareholder of record at least ten days before meeting.).

32.    Accordingly, the prompt dismissal of this case based on want of authority to file is warranted and appropriate. *See In re J&J Property Holdings, LLC*, No. 03-34667, 2004 WL 5463804, at *2 (Bankr. W.D.N.C. Jan. 20, 2004) (dismissing where member had inadequate authority to act on behalf of LLC); *In re: Green Power Kenansville, LLC*, 2004 Bankr. LEXIS 2541 (Bankr. E.D.N.C. November 18, 2004) (same).

WHEREFORE, Maguire respectfully request that this case be dismissed and for such other and further relief as the Court deems necessary and proper.

Dated:   New York, New York
         August 20, 2019

                                              **ROSEN & ASSOCIATES, P.C.**
                                              *Counsel to Maguire Ft. Hamilton LLC*

                                              By:  /s/ Sanford P. Rosen
                                                       Sanford P. Rosen

                                              747 Third Avenue
                                              New York, NY 10017-2803
                                              (212) 223-1100